Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| DAVID RIVERA ORTIZ<br><br>Peticionario<br><br>LESLIEBETH HERNANDEZ RIVERA<br><br>Recurrida<br><br>Ex parte | TA2025CE00193 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aibonito<br><br>Civil Núm.: AI2020RF00076<br><br>Sobre: Divorcio |
|---|---|---|

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 30 de octubre de 2025.

Comparece ante nos, David Rivera Ortiz (en adelante, "el peticionario"). A los fines de solicitar nuestra intervención para que dejemos sin efecto la determinación emitida el 31 de marzo de 2025 y notificada el 15 de mayo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Aibonito. Mediante esta, el referido tribunal acogió la recomendación del "*Informe Social Forense",* preparado por la Unidad Social de Relaciones de Familia y Asuntos de Menores. En consecuencia, mantuvo la custodia monoparental ejercida por Lesliebeth Hernández Rivera (en lo sucesivo, "la recurrida"). A su vez, autorizó que ésta pueda trasladarse con los menores fuera de la jurisdicción de Puerto Rico.

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación recurrida.

**I.**

El 24 de febrero de 2020 el peticionario y la recurrida presentaron conjuntamente una *"Petición"* de divorcio. En lo pertinente, informaron que durante su matrimonio engendraron dos (2) hijos que aun no han advenido a la mayoría de edad. Acordaron que ambos ostentarían la patria potestad

de los menores y la recurrida conservaría su custodia. De igual modo, convinieron los días en que el peticionario llevaría a cabo sus relaciones paternofiliales. Así las cosas, el 4 de septiembre de 2020, el foro primario notificó *"Sentencia"* de divorcio, mediante la cual se declaró disuelto el matrimonio del peticionario y la recurrida.

Posteriormente, el 26 de febrero de 2024, el peticionario presentó *"Moción para que se Adjudique de Jure Custodia Compartida y en Solicitud de Igualdad de Tiempo."* En esencia, sostuvo que había llevado a cabo las relaciones paternofiliales con sus hijos menores durante una extensión de tiempo mayor a la acordada en las estipulaciones de divorcio. Según indicó, se estaba relacionando con sus hijos como si ostentara la custodia compartida de éstos. Así pues, solicitó que se estableciera una custodia compartida en virtud de la Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia, Ley Núm. 223-2011, según enmendada, 32 LPRA sec. 3181 et seq.

En reacción, el 9 de abril de 2024, la recurrida presentó "*Moción en Oposición a Moción para que se Adjudique de Jure Custodia Compartida y en Solicitud de Igualdad de Tiempo."* En síntesis, se opuso a la solicitud del peticionario bajo el fundamento de que éste solo compartía con los menores en fines de semana alternos y no durante la extensión de tiempo que él adujo. Particularizó, que el peticionario había mostrado mayor interés en relacionarse con los menores desde el momento en que ella le comunicó su intención de llevárselos a vivir fuera del país. A su vez, argumentó que los menores tienen gran apego a su persona y que el padre no cumple con los requisitos legales necesarios para ostentar una custodia compartida. Ante tales planteamientos, solicitó que se declarara *No Ha Lugar* la *"Moción para que se Adjudique de Jure Custodia Compartida y en Solicitud de Igualdad de Tiempo."*

Así pues, el 11 de abril de 2024, el foro recurrido refirió el asunto de custodia compartida a la Unidad Social de Relaciones de Familia y Asuntos de Menores para que realizara un estudio social sobre dicho asunto.

Acto seguido, el 17 de abril de 2024, la recurrida presentó *"Moción en Solicitud de Traslado de Menores a Estados Unidos de América."*[1] Informó, que adquirió junto a su cónyuge una residencia en el Estado de Florida y que desea trasladarse en compañía de los menores a vivir en el referido Estado. Expresó, que tal decisión había sido comunicada al peticionario. De otra parte, arguyó que solicitó en dicho Estado una Certificación de Maestra con el fin de aplicar a un puesto laboral en la Escuela donde asistirá uno de sus hijos menores. En cuanto a las relaciones paternofiliales del peticionario, propuso que éste podía llamar a sus hijos; viajar para visitarlos; y compartir con ellos en días festivos, de verano y Navidad.

En respuesta, el 28 de mayo de 2025, el peticionario presentó "*Oposición a Moción en Solicitud de Traslado de Menores a Estados Unidos de América y en Cumplimiento de Orden."* Adujo, que la petición de la recurrida incumple con las disposiciones de la Ley de la Guía Uniforme para Casos de Relocalización del Padre Custodio, Ley Núm. 102-2018, 32 LPRA sec. 3371 et seq. Sobre el particular, sostuvo que la recurrida no le notificó sobre el traslado de los menores de conformidad a las exigencias de la precitada legislación. Además, argumentó que el único interés de la recurrida es cambiar a los menores de escuela y privarle a él del ejercicio de su patria potestad. Entiende el peticionario, que ha compartido ampliamente con los menores y que éstos desean permanecer en Puerto Rico. Cónsono con lo anterior, alegó que es en Puerto Rico en donde los menores tienen mayor bienestar, puesto que cuentan con los servicios de vivienda, educación y plan médico. De igual modo, sostuvo que es el país en el que tienen familiares y amigos.

---

[1] Acompañó su petición con los siguientes documentos: "Juramento;" Certificado de Matrimonio; "Special Warranty Deed;" Fotografías del bien inmueble del Estado de Florida; "Official Statement of Status of Eligibility;" Fotografías de escuelas para los menores; Documento intitulado "Demographic Information;" Datos sobre la secuencia curricular de las escuelas; Fotografías de los hospitales, comercios y parques cercanos a la residencia del Estado de Florida. En un escrito subsiguiente intitulado: *"Moción Sometiendo Documentos Complementarios,"* la recurrida anejó un talonario de ingresos de su cónyuge; Certificado de Antecedentes Penales de su cónyuge; y mensajes de textos sobre sus gestiones para adscribir a los menores a los servicios de un plan médico en el Estado de Florida.

El 30 de mayo de 2024, el foro recurrido, refirió la solicitud de relocalización a la Unidad Social de Relaciones de Familia y Asuntos de Menores. Como medida provisional, advirtió que los menores no podían salir de Puerto Rico sin el consentimiento de ambos progenitores o sin la debida autorización judicial.

Así las cosas, una Trabajadora Social preparó un *"Informe Social Forense."* Éste fue notificado a las partes el día 23 de septiembre de 2024. En la misma fecha, el aludido tribunal notificó una *"Orden."* Mediante esta, les concedió a las partes un término de quince (15) días para que expresaran su posición con relación a dicho informe y su intención, si alguna, de contratar algún perito.

El 1 de octubre de 2024, la recurrida presentó *"Moción en Cumplimiento de Orden y para que se Dicte Resolución."* A través de este escrito, expresó su conformidad con las recomendaciones expuestas en el *"Informe Social Forense."* Peticionó, que se dictara resolución a tenor de las recomendaciones dadas por la Unidad Social.

Por su parte, el 8 de octubre de 2024, el peticionario presentó *"Moción en Cumplimiento de Orden sobre Intención de Iniciar Proceso Dirigido a la Impugnación de Informe de la Unidad Social."* En esencia, informó su desacuerdo con el *"Informe Social Forense"* bajo el fundamento central de que este incumple con las disposiciones de la Ley de la Guía Uniforme para Casos de Relocalización del Padre Custodio, *supra.* Además, sostuvo que el referido informe es parcializado toda vez que deja de tomar en consideración el empleo, si alguno, que tendrá la recurrida en el Estado de Florida. A su vez, entiende que dicho informe es contrario al interés óptimo de los menores y a la política publica sobre custodia compartida.

Examinadas las posturas de las partes, el 31 de octubre de 2024, el foro recurrido notificó una *"Orden."* Mediante esta, señaló la celebración de una *"Vista de Impugnación de Informe Social."* La referida vista tuvo su ocurrencia los días 5 de febrero y 31 de marzo del presente año. A su vez

los días 13 de febrero y 7 de abril de 2025, el foro primario notificó unas minutas en las que se expone una síntesis de lo acontecido durante los días de vista. De estas surge, que las partes tuvieron la oportunidad de interrogar a la Trabajadora Social que redactó el *"Informe Social Forense."* A su vez, lograron interrogar al perito social que contrató el peticionario para impugnar el *"Informe Social Forense."* El referido perito preparó un "*Informe de Revisión del Trabajo Pericial del Informe Social Forense,"* el cual fue notificado el día 23 de enero de 2025. Al culminar la vista, el foro recurrido anunció que notificaría por escrito la correspondiente determinación.

Así pues, el 15 de mayo de 2025, el foro recurrido notificó la *"Resolución"* que hoy nos ocupa. Mediante esta, acogió la recomendación del "*Informe Social Forense,"* preparado por la Unidad Social de Relaciones de Familia y Asuntos de Menores. En consecuencia, mantuvo la custodia monoparental ejercida por la recurrida. A su vez, autorizó que la recurrida pueda trasladarse con los menores fuera de la jurisdicción de Puerto Rico.[2]

En desacuerdo, oportunamente el 30 de mayo de 2025, el peticionario presentó *"Moción de Reconsideración."* En atención de dicha solicitud, el 24 de junio de 2025, el foro recurrido notificó una *"Resolución Interlocutoria,"* mediante la cual declaró *No Ha Lugar* la referida *"Moción de Reconsideración."*

---

[2] Surge del expediente digital del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI la siguiente información:

a). El 22 de julio de 2025, la recurrida presentó evidencia de la aceptación de los menores en una Institución Educativa del Estado de Florida. Véase, Entrada Núm. 159 de SUMAC del TPI.

b). Tras el foro recurrido escuchar la postura de las partes en lo concerniente a las relaciones paterno filiales del peticionario durante la estancia de los menores en el Estado de Florida, el 7 de agosto de 2025, dicho foro notificó una *"Resolución y Orden."* De esta surge las fechas, medios y formas en que el peticionario compartirá con sus hijos. Véase, Entrada Núm. 172 de SUMAC del TPI.

c). El 13 de agosto de 2025, la recurrida presentó evidencia del Plan Médico que los menores tendrán en el Estado de Florida. Véase, Entrada Núm. 173 de SUMAC del TPI.

Todavía en desacuerdo, el 24 de julio de 2025, el peticionario compareció ante este Tribunal mediante un recurso de *certiorari.* A través de este, esbozó los siguientes señalamientos de error:

El TPI cometió error craso de derecho, y abusó de su discreción, en total parcialidad con la recurrida, al determinar autorizar el traslado de los menores para vivir fuera de la jurisdicci[ó]n, en total incumplimiento con los requisitos que establece la ley 102-2018, supra.

El TPI cometió error craso de derecho, abusó de su discreción y de forma irrazonable, contrario a la prueba pericial presentada por el peticionario que fundamentó las violaciones a la referida ley 102-2018, sin prueba alguna de la recurrida que lo impugnara, autorizó el traslado de los menores fuera de la jurisdicci[ó]n, sin garant[í]as de que opera en el mejor bienestar de los menores.

El TPI cometió error craso de derecho, abusó de su discreción y de forma irrazonable autorizó el traslado de los menores en violaci[ó]n de la pol[í]tica publica de la ley 223 y la ley 70 que proh[í]be la enajenaci[ó]n de los menores, a pesar del perfil y comportamiento enajenante demostrado por la recurrida, en claro detrimento del mejor bienestar de los menores.

El TPI cometió error craso en derecho y abusó de su discreción al declarar No Ha Lugar la reconsideración.

El TPI cometió error craso, abusó de su discreción en total parcialidad, al autorizar el traslado de los menores contrario a la prueba desfilada, por lo cual erró en la apreciación de la prueba.

En la misma fecha, el peticionario presentó ante esta Curia una *"Moción en Auxilio de Jurisdicción."* A los fines de solicitar que paralizáramos los procedimientos ante el foro primario y con ello los efectos de la determinación recurrida. En atención de ello, un Panel Hermano adjudicó la referida moción y la declaró *No Ha Lugar*. En la *"Resolución"* emitida al respecto se les concedió a las partes una serie de términos para presentar oposición al recurso; transcripción de la prueba oral y alegatos suplementarios.

En cumplimiento de ello, el 25 de agosto de 2025, el peticionario presentó la transcripción de las vistas del 5 de febrero de 2025 y 31 de marzo de 2025. Al siguiente día, la recurrida presentó "*Moción en Cumplimiento de Orden Sometiendo Memorando en Oposición a Expedición Auto de Certiorari."* Además, el 29 de agosto de 2025, la recurrida estipuló el contenido de las transcripciones presentadas por el peticionario. Finalmente, el 3 de octubre de 2025 y el 17 de octubre de

2025, las partes presentaron respectivamente el alegato suplementario y el alegato en oposición, según les fue requerido.

Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco jurídico aplicable a la controversia ante nuestra consideración.

**II.**

**A.      Custodia de menores:**

Nuestro ordenamiento jurídico promueve la participación de ambos progenitores en la vida de los menores luego de la ocurrencia de un proceso de divorcio o de la separación de una pareja consensual. Exposición de Motivos de la Ley Núm. 223-2011, *supra.* Cónsono con lo anterior, nuestro sistema legal busca garantizar el derecho de los menores a disfrutar de "ambos progenitores en su vida, en el mayor grado posible, en la misma forma que se les garantiza a los niños que viven con ambos progenitores." *Id.* Es por ello que nuestro Gobierno adoptó como política pública "la promoción de la custodia compartida y corresponsabilidad sobre los hijos; la consideración de la misma como primera alternativa en los casos que se ajuste al mejor bienestar del menor; y el promover la participación activa de ambos progenitores en las actividades de los hijos, en el mayor grado posible." 32 LPRA sec. 3181.

Por custodia compartida se entiende "la obligación de ambos progenitores de ejercer directa y totalmente todos los deberes y funciones que conlleva la patria potestad de los hijos, relacionándose con estos el mayor tiempo posible y brindándoles la compañía y atención que se espera del progenitor responsable." Artículo 602 del Código Civil de Puerto Rico, 31 LPRA sec. 7281. Cabe señalar, que la concepción de la custodia compartida no se establece en el vacío o en ausencia de parámetro alguno. No es compulsorio que un tribunal fije la custodia compartida. 32 LPRA sec. 3182. Al examinar la procedencia de ésta, los tribunales deberán considerar la recomendación que un trabajador social realice al efecto; priorizarán el mejor bienestar de los menores a la luz de todas las

circunstancias existentes y tomarán en consideración la Ley Núm. 223-2011, 32 LPRA sec. 3186. Véase, además, *Muñoz Sánchez v. Báez De Jesús,* 195 DPR 645, 651-652 (2016).

Ha sido resuelto por nuestro más Alto Foro que el mejor interés de los menores está enmarcado en el derecho que éstos tienen a una correcta formación física, moral y espiritual. *Ortiz v. Meléndez*, 164 DPR 16, 27 (2005). Para el interés óptimo de los menores el foro judicial debe tomar en consideración el siguiente listado no taxativo:

> [L]a preferencia del menor, su sexo, edad y salud mental y física; el cariño que puede brindársele por las partes en controversia; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y la salud psíquica de todas las partes. *Ortiz v. Meléndez*, supra, pág. 27, citando a *Marrero Reyes v. García Ramírez*, 105 DPR 90, 105 (1976).

Cabe señalar que toda determinación sobre custodia que emita un tribunal no constituirá cosa juzgada. 32 LPRA sec. 3188. Además, el progenitor no custodio tiene derecho a comunicarse con los menores, a visitarlos y tenerlos en su compañía. Artículo 618 del Código Civil de Puerto Rico, 31 LPRA sec. 7331.

**B. Guías para seguir en casos de Relocalización del progenitor custodio a tenor de la Ley Núm. 102-2018:**

La Ley Núm. 102-2018, *supra,* "busca proteger las relaciones filiales que deben existir en el desarrollo de un menor, esto claro está, sin menoscabar el derecho que tiene el padre custodio en rehacer su vida." Exposición de Motivos de la Ley Núm. 102-2018, *supra.* En vista de lo anterior, a través del precitado estatuto, el legislador estableció unos criterios uniformes para atender el asunto de la relocalización y brindar a los jueces una serie de elementos que permitan la toma de decisiones en las que se garantice la sana relación de los progenitores y los menores. *Id.*

La relocalización se permite si se prueba lo siguiente: 1. No es para impedir la relación del padre no custodio o persona interesada con el menor; 2. Existe una razón válida y determinante para relocalizarse; y 3. Ofrecerá una mejor oportunidad de vida tanto para el padre custodio o tutor

como para el menor. 32 LPRA sec. 3376. Además, en la ejecución del referido examen se habrá de considerar los siguientes factores:

1. Preferencia del menor en aquellos casos donde tenga derecho a ser oído;
2. Relación del menor con el padre no custodio;
3. Relación del menor con las personas interesadas y la forma en que éstos llevan a cabo su derecho de visita;
4. Periodo de tiempo que el menor lleva residiendo en la residencia principal y los lazos emocionales que lo une a ella;
5. Oportunidades de desarrollo, tanto emocional, como físico y educacional;
6. Impacto que tendrá el traslado en su desarrollo;
7. Disposición del padre custodio o tutor de permitir al otro padre no custodio o persona interesada de ejercer su derecho a visita, relacionarse con el menor y custodia compartida en los casos que aplique;
8. Potencial de cambio en la vida del padre custodio o tutor y del menor;
9. Posibilidad económica del padre no custodio o persona interesada de ejercer su derecho a visita para relacionarse con el menor;
10. Grado de responsabilidad del padre no custodio o persona interesada en sus obligaciones para con el menor;
11. El Tribunal podrá ordenar el realizar un estudio social del área al cual planean mudar al menor. Este estudio, entre otras cosas, deberá incluir un análisis de la criminalidad del área interesada;
12. Lugar donde el menor va a estudiar, nombre e información completa de la escuela: dirección, teléfono, maestro del menor y nombre del director;
13. En caso de que el menor no tenga edad suficiente para asistir a la escuela, nombre del cuido e información completa en el que estará el menor o en caso de que sea una persona particular información completa de la misma;
14. Lugar de trabajo, nombre e información general del padre custodio o tutor legal: teléfono, dirección y nombre del patrono;
15. Información de las personas adicionales al padre custodio o tutor legal con las que vivirá el menor, de ser el caso;
16. Información del casero en los casos donde la residencia sea alquilada;
17. Certificación de empleo o estudios;
18. Se observará la recomendación del trabajador social en cuanto al efecto que esto tendrá en el menor;
19. El seguro médico que tendrá el menor; y
20. Cualquier otro factor que el juzgador entienda necesario, tomando como principio la equidad entre las partes. 32 LPRA sec. 3376.

## C.     *Apreciación de la Prueba*

En materia de prueba testimonial, "[h]emos expresado que la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada." *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778 (2022). A tono de ello, la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida

consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos". Así pues, es usual que no intervengamos, ni alteraremos innecesariamente las determinaciones de hecho formuladas por el tribunal de primera instancia luego de que se admita y aquilate la prueba presentada durante el juicio. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 65 (2009). Es decir, no podemos "descartar y sustituir las determinaciones tajantes y ponderadas del foro de instancia" por nuestra propia apreciación, a base de un examen del expediente del caso. *Id.*, págs. 65-66.

Es bien sabido que nos corresponde brindarle deferencia al foro primario salvo que exista un error manifiesto o que el tribunal sentenciador haya actuado movido por prejuicio, parcialidad o pasión. *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 987 (2010). Mediante esta norma de deferencia, se impone respeto a la evaluación que hace el tribunal de instancia al aquilatar la credibilidad de un testigo pues es dicho foro quien está en mejor posición para hacerlo. *Id.* Los foros apelativos sólo tenemos ante nos expedientes "mudos e inexpresivos". *Id.* Es el foro primario quien tiene la oportunidad de escuchar a los testigos mientras declaran y así puede apreciar su "*demeanor*". *Colón v. Lotería*, 167 DPR 625, 659 (2006). Es dicho foro quien debe adjudicar los conflictos de prueba. *S. L. G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009).

Ahora bien, esta norma no es absoluta pues procederá nuestra intervención con dicha valoración si una evaluación de la totalidad de la prueba testifical nos provoca tal insatisfacción o intranquilidad de conciencia que perturbe nuestro sentido básico de justicia. *S. L. G. Rivera Carrasquillo v. A.A.A.*, supra, pág. 356. La parte apelante que interese su revocación es quien tiene que señalar y demostrar el fundamento para ello. *Id.* Quien cuestione la determinación de hechos realizada es quien debe señalar el error manifiesto o fundamentar que existió pasión, prejuicio o parcialidad. *Id.* Igualmente, intervendremos si la apreciación de la prueba realizada por el foro primario no concuerda con la realidad fáctica o "es

inherentemente imposible o increíble". *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002).

Será también meritoria nuestra intervención en casos en los que la apreciación de la prueba del foro primario no represente "el balance más racional, justiciero y jurídico de la totalidad de la prueba". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). *Miranda Cruz y otros v. S.L.G. Ritch*, 176 DPR 951, 974 (2009). El tribunal de primera instancia se excederá en el ejercicio de su discreción si, al apreciar la prueba, infundadamente le asigna gran valor a un hecho irrelevante e inmaterial, y basa su determinación exclusivamente en éste; o si injustificadamente pasa por alto un hecho material significativo que no debió ignorar; o si, aun considerando todos los hechos materiales y descartando todos los irrelevantes, los sopesa y calibra de forma liviana. *García v. Asociación*, 165 DPR 311, 321-322 (2005).

De otra parte, en lo que corresponde a la prueba pericial, es norma establecida que los tribunales apelativos se encuentran en la misma posición que foro sentenciador para evaluar dicha prueba. S*antiago Ortiz v. Real Legacy Assurance* et al., supra, pág. 219. De esta manera, el foro revisor podrá adoptar su propio criterio de apreciación y descartar la prueba pericial, aunque resulte técnicamente correcta. *Íd.* Ello, con el fin de proveer el justo valor probatorio. *Id.* A tenor de lo anterior, la Regla 702 de Evidencia nos ilustra con relación a la forma en que se evaluará el valor probatorio de una prueba pericial. Así, dispone que el valor probatorio dependerá de los siguientes factores:

    (a)    [s]i el testimonio está basado en hechos o información suficiente;
    (b)    si el testimonio es el producto de principios y métodos confiables;
    (c)    si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso;
    (d)    si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica;
    (e)    las calificaciones o credenciales de la persona testigo, y
    (f)    la parcialidad de la persona testigo
        32 LPRA Ap. VI, R. 702.

A pesar de que un mínimo de evidencia es suficiente para establecer la cualificación de un perito, si se presentan credenciales excelentes de

este, las mismas contribuirán al valor probatorio de la evidencia pericial. *Dye-Tex P.R., Inc. v. Royal Ins. Co., P.R.,* 150, 664 DPR 658 (2000), citando a E.L. Chiesa, P.P.P.-I, Evidencia ob. Cit. a la pág. 245.

**III.**

En sus comparecencias ante esta Curia, el peticionario aduce en esencia que el *"Informe Social Forense"* refleja parcialidad y que el foro primario incumplió con los requisitos dispuestos en la Ley Núm. 102-2018, *supra.* Particularmente, alega que el referido foro no tomó en consideración que la recurrida no tiene empleo en el Estado de Florida ni produjo prueba de los seguros, si alguno, que tendrán los menores en dicho Estado. A su vez, arguye que el *"Informe Social Forense"* no tiene datos comparativos de ambos países los cuales indiquen que los menores tendrán mejor calidad de vida en el Estado de Florida. Además, plantea que los menores tienen una vivienda segura en Puerto Rico para la cual la recurrida no pagaba cánones de arrendamiento, y asevera que la relocalización de los menores afectará sus lazos familiares del lado paterno. Por último, sostiene que de la prueba presentada no surge que el interés óptimo de los menores esté en el Estado de Florida.

Por su parte, la recurrida argumenta que la *"Resolución"* que hoy se revisa es correcta y de conformidad a la Ley Núm. 102-2018, *supra*. Fundamenta su postura en el hecho de que existieron evaluaciones periciales; vistas de impugnación del *"Informe Social Forense;"* y los menores fueron entrevistados. Además, plantea que a las partes se les garantizó su derecho a un debido proceso de ley y que la Ley Núm. 102-2018 no exige llevar a cabo un estudio socioeconómico. De igual modo, alega que el interés óptimo de los menores fue protegido, puesto que éstos tienen plan médico y educación en el Estado de Florida. A su vez, arguye que su cónyuge se hará cargo de los gastos del hogar y que ella tiene certificación de maestra para trabajar en el referido Estado.

Tras examinar detenida y juiciosamente la totalidad del expediente del caso, se hace necesario puntualizar la difícil tarea que representa para

los tribunales el decidir sobre controversias familiares como la aquí presente. Somos conscientes de los intereses importantísimos involucrados en el presente caso. Ambos progenitores tienen el derecho y la libertad natural de construir los cimientos de sus respectivas vidas. De igual modo, los progenitores y los foros judiciales tenemos el deber jurídico asignado y moralmente ineludible de salvaguardar de forma principal el interés óptimo de los menores.

Hoy corresponde a este Foro auscultar si el referido interés óptimo ha sido debidamente protegido, pero diariamente les atañe a estos dos progenitores continuar la labor que con arduo empeño han seguido para garantizar el interés de sus hijos. Para el logro de ello, es vital que prevalezca la sana comunicación, buenos tratos y el respeto a los derechos paternales y maternales correspondientes. Los menores lo agradecerán.

Habiendo establecido lo anterior, a tenor de la normativa vigente y de las circunstancias particulares del asunto que hoy se revisa, concluimos *confirmar* la *"Resolución"* recurrida.

Según expuesto, nuestro ordenamiento jurídico favorece la participación activa de los progenitores, dentro del mayor grado posible en las actividades y vida de sus hijos. No obstante, no existe una obligación de fijar custodia compartida para todos los casos, puesto que ello depende del mejor bienestar de los menores a la luz de las circunstancias existentes y de las diferentes legislaciones que regulan el asunto a atender. En este caso, el peticionario solicitó la custodia compartida de sus hijos menores y la recurrida solicitó autorización judicial para relocalizarse junto a dichos menores al Estado de Florida. Las peticiones de relocalización de menores deben ser evaluadas de conformidad a la Ley Núm. 102-2018, *supra.*

La precitada legislación busca proteger las relaciones paternofiliales sin menoscabar el derecho que tiene el progenitor custodio de rehacer su vida. A tenor de lo anterior, la Asamblea Legislativa creó mediante las disposiciones de dicha ley unos criterios uniformes para que los tribunales atiendan el asunto de la relocalización. La relocalización se permitirá si se

TA2025CE00193                                                                14

cumplen los siguientes criterios principales: 1. No es para impedir la relación del padre no custodio o persona interesada con el menor; 2. Existe una razón válida y determinante para relocalizarse; y 3. Ofrecerá una mejor oportunidad de vida tanto para el padre custodio o tutor como para el menor. 32 LPRA sec. 3376.

Surge del expediente ante nuestra consideración, que la decisión de traslado de la recurrida se basa en que contrajo nuevas nupcias y adquirió junto a su cónyuge una residencia en el Estado de Florida. [3] Estas circunstancias van acordes con encaminar el rumbo y el desarrollo de su vida. Asimismo, no reflejan una intención de impedir la relación del peticionario con sus hijos. De igual modo, representan una razón válida para relocalizarse. Además, los menores residirán en una casa adecuada que es propiedad del matrimonio compuesto por la recurrida y su cónyuge.

Surge del expediente, que los menores actualmente tienen plan médico; estudian en la misma institución académica; sus abuelos maternos tienen residencia cercana a éstos; el cónyuge de la recurrida tiene a su cargo los gastos del hogar; y la recurrida está certificada para ejercer su profesión en el Estado de Florida, de así estimarlo.[4] Todo ello, representa seguridad y oportunidades de vida para la referida parte y los menores. A preguntas de la Trabajadora Social, el peticionario respondió que conocía, antes de presentarse la solicitud de relocalización, el interés de la recurrida de trasladarse al Estado de Florida, puesto que ésta así se lo indicó durante la conversación desarrollada en una reunión.[5] Ante ello, no estamos ante un escenario de una decisión arbitraria o precipitada que haya afectado los

---

[3] Véase, *"Informe Social Forense,"* anejo de la Entrada Núm. 75 de SUMAC del TPI, pág. 23. Además, obsérvese *"Transcripción de Regrabación de Vista Evidenciara sobre Impugnación de Informe Social,"* pág. 105 y pág. 110. Vista del 5 de febrero de 2025. Entrada Núm. 6 de SUMAC del TA. También refiérase a la *"Moción en Solicitud de Traslado de Menores a Estados Unidos de América"* del 17 de abril de 2024, presentada por la recurrida.

[4] Véase, *"Informe Social Forense,"* anejo de la Entrada Núm. 75 de SUMAC del TPI, pág. 17, 18 y 21 del referido Informe.

[5] Véase, *"Informe Social Forense,"* anejo de la Entrada Núm. 75 de SUMAC del TPI, pág. 8 y 19 del referido Informe. Además, obsérvese *"Transcripción de Regrabación de Vista Evidenciara sobre Impugnación de Informe Social,"* pág. 105 y pág. 108-110. Vista del 5 de febrero de 2025. Entrada Núm. 6 de SUMAC del TA.

derechos del peticionario o de los menores. Además, la viabilidad del traslado se pudo dilucidar adecuadamente en el foro judicial. Durante este proceso, las partes tuvieron amplia oportunidad de exponer y fundamentar sus posturas y les fueron salvaguardadas las garantías del debido proceso de ley.

Nótese, que de conformidad a la Ley 102-2018, *supra,* el foro primario podrá, pero no está obligado, a realizar un estudio social del área a la cual se planea relocalizar a los menores. De manera que, el estudio interjurisdiccional o comparativo aducido por el peticionario no era un requisito compulsorio para legítimamente autorizar la relocalización de estos menores. Además, obsérvese que la referida relocalización no se efectuó de forma automática. Los asuntos disputados por las partes fueron examinados a través de un *"Informe Social Forense"* debidamente fundamentado. Por medio del aludido Informe, la Unidad Social recopiló datos vía entrevistas. La Trabajadora Social entrevistó a ambos progenitores; a los menores; la Directora Escolar de la Institución Educativa de los menores en Puerto Rico; maestras de los menores en Puerto Rico; al psicólogo de los menores; los respectivos cónyuges de los progenitores; y a los abuelos maternos.[6]

A esto se une, que el peticionario tuvo la oportunidad de cuestionar el Informe rendido en la "*Vista de Impugnación de Informe Social,"* celebrada los días 5 de febrero y 31 de marzo del presente año, por el foro recurrido. Durante los días de vista, las partes pudieron interrogar a la Trabajadora Social que preparó el *"Informe Social Forense."* Asimismo, el peticionario pudo presentar prueba pericial de impugnación. A esos fines, presentó el testimonio de un perito social el cual preparó un *"Informe de Revisión del Trabajo Pericial del Informe Social Forense."* Siendo así, la determinación recurrida no se da en el vacío, sino que se fundamenta en la evidencia presentada.

---

[6] Véase, *"Informe Social Forense,"* anejo de la Entrada Núm. 75 de SUMAC del TPI, pág. 4-5 del referido Informe.

Prestamos deferencia a la apreciación de la prueba realizada por el foro primario, puesto que no hallamos en su determinación indicios de prejuicio, parcialidad o pasión. De igual modo, no intervendremos con el valor probatorio concedido a la prueba pericial. El testimonio de la Trabajadora Social que preparó el *"Informe Social Forense,"* se basa en hechos suficientes y su Informe es producto de la metodología que ordinariamente se utiliza en los tribunales para este tipo de informes. A respuestas del perito contratado por el peticionario, el *"Informe Social Forense"* es "conforme al protocolo de las Normas y Procedimientos."[7]

Cabe destacar, que los derechos de patria potestad del peticionario están debidamente protegidos y así se desprende del "*Plan de Relaciones Filiales,"* contenido en la *"Resolución y Orden,"* notificada por el foro primario el día 7 de agosto de 2025. El referido Plan se estableció luego de que el tribunal de instancia solicitara las posiciones de las partes al respecto y éstas cumpliera con tal requerimiento. De otra parte, es preciso señalar, que en el presente caso no se ha mostrado evidencia de enajenación parental a tenor de los preceptos de la Ley Núm. 223-2011*, supra.* Según expuesto, la decisión de mantener la custodia de los menores a favor de la recurrida es producto de una evaluación de las circunstancias del caso, la normativa vigente y del contenido del *"Informe Social Forense*."

Es menester reiterar, que las determinaciones de custodia no constituyen cosa juzgada y que siempre se buscará salvaguardar el interés óptimo de los menores. De manera que, de surgir un cambio en las circunstancias actuales, la custodia monoparental y la relocalización hoy dictaminadas podrían en su momento ser modificadas. Mientras tanto, es aconsejable que las partes cumplan a través del diálogo cordial con el "*Plan de Relaciones Filiales"* y con sus deberes generales de patria potestad. Así,

---

[7] Véase, *"Transcripción de Regrabación de Vista Evidenciara sobre Impugnación de Informe Social,"* pág. 18-19. Vista del 31 de marzo de 2025. Entrada Núm. 6 de SUMAC del TA. Además, obsérvese, *"Transcripción de Regrabación de Vista Evidenciara sobre Impugnación de Informe Social,"* pág. 101. Vista del 5 de febrero de 2025. Entrada Núm. 6 de SUMAC del TA.

el mejor bienestar de los menores prevalecerá y se cumplirá el deseo de éstos de compartir el mayor tiempo posible con ambos progenitores.

Ante los fundamentos que anteceden, concluimos que los errores señalados no fueron cometidos. En consecuencia, *confirmamos* la determinación recurrida.

**IV.**

Por los fundamentos expuestos, *confirmamos* el dictamen objeto de revisión.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones